# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Bernita L. Vance, et al.,                                   Case No. 3:11CV2182

      Plaintiffs,

      v.                                                    **ORDER**

City of Maumee, Ohio

      Defendant

      This is a disability and housing discrimination case. Pending is Defendant's motion for summary judgment (Doc. 28). Also pending is Plaintiff's counter-motion for partial summary judgment (Doc. 36) on her reasonable accommodation claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(7), and the Fair Housing Act (FHA), 42 U.S.C. § 3604(f)(3)(B).[1]

      Jurisdiction is proper under 28 U.S.C. § 1331.

      For the reasons that follow, I grant Plaintiff's motion in part and deny it in part and deny Defendant's motion.

### Background

---

[1] Plaintiff does not seek summary judgment on her remaining claims which include: disparate treatment, 42 U.S.C. § 12132; retaliation, 42 U.S.C. § 12203; retaliation, 42 U.S.C. § 3617; making housing unavailable, 42 U.S.C. § 3604 (f)(1); and discrimination in provision of services, 42 U.S.C. § 3604 (f)(2).

Plaintiff, Bernita Vance, is disabled.[2] Her physical ailments include: hyperlipidemia, hypertension, coronary artery disease, deep vein thrombosis, pulmonary embolism, syncope, chest pain, dyspnea, acute thrombosis, osteopenia, and chronic back pain. She has had multiple heart attacks. Between 2005 and 2006 Plaintiff had both knees replaced. She alleges that her condition has deteriorated significantly in the last few years.

Since 1992, Plaintiff and her husband have lived in a single family residence in Maumee, Ohio. The front entrance to the home faces the street. The lot slopes downward from the house to the street. To access the front entrance from the street one has to walk up eleven inclined steps..

The back entrance to plaintiffs' home faces an alley. The back portion of their lot from her back entrance to the alley is level.

The alley, which is sixteen and a half feet wide and 410 feet long, parallels the street. Entrance to the alley is from a cross street to the East. The West end of the alley deadends near the at a cross street and a ravine. Plaintiff's property is on the westernmost portion of the alley.

The City has graveled the easternmost 170 feet of the alley. The remainder has become overgrown with grass and other vegetation. The City plows and maintains this portion of the alley to provide driveway access for the corner house on plaintiff's street.

The corner house is the only residence on the street with a driveway entrance onto the alley. The remaining residents access their driveways from the street .

Currently, Plaintiff can enter her home in one of three ways: 1) park on the street, climb eleven stairs, cross the front lawn, and climb another seven stairs; 2) park in the driveway and climb

---

[2] Plaintiff's husband, Winston Vance, is also a plaintiff in this case. Specifically he joins plaintiff in the asserting retaliation and discrimination under 42 U.S.C. § 3604(f)(1)(2)(3).

eighteen outdoor stairs leading from the driveway to the back porch; or 3) park in the garage and climb eighteen stairs leading from the garage to the hoome's first floor.

According to Plaintiff, her physical impairments limit her to using the eighteen outdoor stairs to the home's back entrance. She alleges these stairs are the least steep. To get up the stairs, Plaintiff crawls on her hands and feet or pulls herself up one step at a time using blocks her husband installed on the railing. Plaintiff states that entering her home in this manner causes her substantial pain and embarrassment.

Members of Plaintiff's family live nearby. Her daughter built a home in 2002 on the lot on the east of of Plaintiff's lot.[3] At that time, Plaintiffs asked the City to extend the graveled portion of the alley to the rear of her house, where she wanted to build a connecting driveway similar to that on the corner lot. The City refused, the daughter appealed, and the Common Pleas Court of Lucas County affirmed the denial of the request, which was not appealed.

In 2007, Plaintiff began seeking  alley access for herself. She sent her first written request for alley access in May, 2007, to the City. At that time, Plaintiff 's physical impairments had become so severe that they precluded her from accessing her home from the street. Plaintiff alleges her request specifically informed the City of her disability and stated that she was requesting accommodation under the Americans Disabilities Act. The City does not recall receiving this request.

A month after Plaintiff  sent her first request, she had an attorney send the City a request for alley access. The City confirms that it did in fact receive this written request. However, according

---

 Plaintiff's son lives across her home behind the alley. He does not seek to share alley access with the plaintiff.

to the City, it did not consider the letter to be a formal request for reasonable accommodation because the letter referenced "health concerns" rather than disability, *per se*.

Three years later, after a third heart incident, Plaintiff states that she made another written request for accommodation. According to Plaintiff, that request again noted her "legal disability rights." The City does not recall receiving this request.

In addition to acknowledging receipt of one written request, the City does not dispute that its ADA coordinator spoke with Plaintiff at least three times between 2009 and 2010. According to both Plaintiff and the City, during each of these conversations, the parties discussed Plaintiff's need to use the alley to access her home because of her serious health problems.

In July or August 2010, in accordance with municipal procedure, Plaintiff filed a formal petition for alley access.[4]

---

[4] M.R.C. 905.03 provides:

Any person desiring to have opened, use, travel upon or improve an unopened street, alley or way, or a street, alley or way unimproved for travel, shall file a written request therefor with Council. Such request shall thereupon be referred to the Director of Public Service for investigation and recommendation as to the character, extent and adequacy of the grading, draining, paving, sewers or other utilities deemed necessary in the public interest to be performed, constructed or installed therein prior to such opening, use or travel and the estimated cost of installing, constructing or reconstructing the same if already installed or constructed. Action by Council upon such request shall be deferred for a period not to exceed thirty days for report and a recommendation of the Director in respect thereto.

In lieu of constructing or performing the work of such grading, draining, paving or installation of utilities as Council shall declare necessary, the party desiring to have opened, use, travel upon or improve such street, alley or way may: (1) File a bond for the performance of such work . . . and perform such work or construction under the supervision of and in accordance with plans, profiles and specifications established or approved by the Director; or (2) File with Council a petition signed by the owners of not less than sixty percent of the front footage of the lots and

4

The petition stated:

> The majority of landowners abutting the alley in the three hundred blocks of West Broadway Street and West Harrison Street, Hunts Addition, are requesting that the small portion of the alley that has become overgrown with grass be resurfaced to allow them full use and full access of the open public alley.

> In the event that the City of Maumee does not have the money to do the work it can be done at the petitioners expense by Vance Property Management. Proof of bond may be provided if needed.

Plaintiff's petition was on the agenda for the following City Council meeting. However, the Council did not discuss  Plaintiff's disability or the substance of the petition. Instead, the Council agreed to remove consideration of the petition from the agenda because the petition did not have "fifty percent of the property owners' signatures, as required."

On November 15, 2010, according to the Plaintiffs, the Ability Center of Greater Toledo contacted the City to reaffirm Plaintiff's need for accommodation. The City's disability coordinator does not dispute that the Center contacted the City and helped install the hand railings on the Plaintiff's property.

On November 16, 2010, Mr. Vance and his son began installing a parking pad on the back portion of the Plaintiff's lot. Prior to Mr. Vance's beginning the work, the City had assured him that he did not need a permit to build the pad. Shortly after this project began, the City's Public Commissioner and Police Chief arrived. Mr. Vance had used the alley to bring in gravel and had temporarily placed some of the gravel on the alley. The Commissioner informed Mr. Vance that he could not use the alley for any purpose and would be fined if he did not stop using the alley and remove the gravel immediately.

---

lands bounding and abutting such street.  .  .  .

5

In response, Mr. Vance threatened to sue the City for discrimination. That same day, the Commissioner installed a "road closed" temporary barricade at the east end of the of the alley.

Currently, that  barricade continues to block Plaintiff from driving down the portion of the alley behind her home. It is undisputed that Plaintiff could, if the barricade were removed, drive her car over this portion of the alley without difficulty. Both the Commissioner and Plaintiff's engineering expert agree that the alley can support light vehicular traffic. Larger utility vehicles currently access this portion of the alley to make repairs when necessary.

As of the time Plaintiff filed this suit, the City had not: 1) contacted Plaintiff to assess the extent of her condition; 2) followed up on its telephone conversations with Plaintiff; or 3) responded to her written request for accommodation. The City had yet to consider anyoptions for accommodating Plaintiff.

At issue as a result of the pending motions are plaintiff's claims that the City's actions violate her right to reasonable accommodation under the ADA and FHA and constitute retaliation for her exercise of rights under those statutes.

**Standard of Review**

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett,* 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 23.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to

6

go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex, supra,* 477 U.S. at 324.

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of material fact. *Celotex, supra,* 477 U.S. at 323.Close up one space

### Discussion

### 1. Collateral Estoppel and
### Judicial Estoppel

The City claims that the judgment of the Lucas County Common Pleas Court bars this suit pursuant to the doctrines of collateral estoppel and judicial estoppel. Collateral estoppel is an affirmative defense. As such, a defendant bears the burden of proving a court has previously decided an issue. *McNamara v. Ohio Bldg. Authority,* 697 F.Supp2d 820, 830 (N.D. Ohio 2010) (citing *Spilman v. Harley,* 656 F.2d 224, 229 (6th Cir.1981).

To prove a prior judgment bars relitigating an issue, a defendant must show the issue: 1) is identical to that resolved in the earlier litigation; 2) was actually litigated and decided in the prior action; and 3)  was necessary and essential to a judgment on the merits in the prior litigation. The defendant must also show the party to be estopped: 1) was a party to the prior litigation (or in privity with such a party); and 2) had a full and fair opportunity to litigate the issue.

The doctrine of judicial estoppel bars a party from asserting a position if he or she: 1) previously asserted a contrary position under oath; and 2) a court previously adopted that contrary position. *Longaberger Co. v. Kolt,* 586 F.3d 459, 470 (6th Cir. 2009) (quotations omitted).

The City argues that Plaintiff is either collaterally estopped or precluded, under the doctrine of judicial estoppel, from relitigating the issue of whether the alley is open.[5]

Plaintiff states she is not relitigating an already decided issue or asserting a position contrary to one she previously asserted. According to Plaintiff, her earlier suit sought alley access for her daughter and her house on the adjacent property. Plaintiff states that the court in that case never adopted a position respecting whether the alley was open or closed/improved or unimproved.

Moreover, Plaintiff argues that the issue of whether the City is required to give her alley access to accommodate her disability is separate and distinct from the issue of whether the City should have given her daughter alley access.

After reviewing the decision of the Common Pleas Court, I find it did not adopt any position respecting the status of the alley. Moreover, I agree with Plaintiff that the court did not consider whether the City has a duty under federal anti-discrimination laws to allow alley access. That issue is separate and distinct from the issue of the City's authority to regulate public right-of-ways absent any overriding federal discrimination law concerns.

---

[5]  The parties agree that the City ordinance draws a distinction between opening and improving a public right-of-way. They also agree the City does not employ formal definitions of either term. I find the formal definitions or distinctions between the terms are irrelevant to the resolution of the pending summary judgment motions.

The City and Plaintiff have differently framed the relevant service Plaintiff seeks - the parties characterize the service as opening or improving the alley respectively. Regardless of which party is correct regarding the current status of the alley as open or closed, improved or unimproved, the actual service Plaintiff requests is undisputed: Plaintiff seeks to have the City perform or approve whatever services are necessary to allow to drive on the portion of the alley behind her home.

I conclude, accordingly, that neither collateral nor judicial estoppel precludes Plaintiff from pursuing her claims in this case.

## 2. Reasonable Accommodation
## Under the ADA and FHA

The ADA provides "[N]o qualified individual with a disability shall, by reason of such disability, be . . . denied the benefits of the services . . . of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The implementing regulations further provide that, "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

Similarly, the FHA prohibits discrimination "in the provision of services or facilities in connection with [a] dwelling." Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604.

The City not disputing the issue of plaintiff's disabled status, the question remains as to whether she is a "qualified" individual.

### A. Qualification

A disabled individual is qualified if "with or without reasonable modifications to rules, policies, . . . practices . . . or transportation barriers . . . [the individual] meets the essential eligibility requirements for the receipt of services . . . provided by a public entity." 42 U.S.C. § 12131. According to the ADA Technical Manual, "The "essential eligibility requirements" for participation in many activities of public entities may be minimal. For example, most public entities

9

provide information about their programs, activities, and services upon request. In such situations, the only "eligibility requirement" for receipt of such information would be the request for it." Manual available at http://www.ada.gov/taman2.html#II-2.8000.

The City argues that Plaintiff is not qualified to have access to the alley because her garage entrance does not face the alley.

Plaintiff argues that the opening or improving of the alley is a public service, and, as such, there are no applicable eligibility requirements.

Neither party is wholly correct.

Section 905.03 of the Maumee Municipal Code provides that "any person" may have an alley opened or improved if, after filing a written petition,: 1) the City decides to provide the required improvements; 2) the individual posts a bond and performs the improvements in accordance with the City's specifications; or 3) sixty percent of the lot owners abutting the alley sign a petition in favor of opening or improving the alley.[6]

Plaintiff is correct that opening or improving alleys is a service the City provides to the public generally – "any person" may petition to have an alley opened or improved.

The City is also correct that it has placed eligibility requirements on the receipt of this service – the petition requirements elucidated in the ordinance.

After considering the ordinance and the public nature of the service requested, I cannot agree that garage location can fairly be considered an eligibility requirement. Moreover, I find that

---

[6] There is also an option for obtaining improvements by assessing the fee to all abutting property owners. However, this option is irrelevant to the present dispute.

10

Plaintiff filed a proper request. Even if Plaintiff did not have the requisite number of signatures, she has agreed to post bond for the alley alterations.

I reject the City's argument that Plaintiff is not "qualified" to have the alley opened.

### B. Reasonableness and Necessity
### of the Accommodation

The next issue is whether the City unreasonably denied Plaintiff's request for accommodation.

This court applies the same standard to evaluate requests for reasonable accommodation under the ADA and FHA. *Harding v. City of Toledo,* 433 F.Supp. 2d 867, 872 (N.D. Ohio 2006) (citing *Oconomowoc Residential Programs, Inc. v. City of Milwaukee,* 300 F.3d 775, 783 (7th Cir. 2002)).

A qualified disabled individual's request for accommodation must be granted if it is both: 1) reasonable and 2) necessary. *Smith v. Lee Assocs., Inc. v. City of Taylor, Michigan,* 102 F.3d 781, 795 (6th Cir. 1996) (citing *Southeastern Community College v. Davis,* 442 U.S. 397, 410, 412 (1979)).

The City bears the burden of showing that a requested accommodation is unreasonable. *Smith, supra,* 102 F.3d at 795. At a minimum, to satisfy its burden, the City must explain: 1) the nature or "purposes behind the rule" or policy; and 2) how accommodating Plaintiff would be contrary to those purposes. *Jones, supra,* 341 F.3d at 480.

Reasonableness is determined using a commonsense approach that "balances the needs of the parties involved." *United States v. Village of Palatine, Illinois,* 37 F.3d 1230, 1234 (7th Cir. 1994); *accord Smith, supra,* 102 F.3d at 796 (stating that after "[w]eighing the benefits to the elderly disabled against the cost to [the City]" the accommodation appears reasonable") . Generally, "[A]n

11

accommodation is reasonable unless it requires a fundamental alteration in the nature of a program or imposes undue financial and administrative burdens." *Smith, supra,* 102 F.3d at 795 (quotations omitted).

The definition of "necessity" under anti-discrimination law alters the commonly understood meaning of the term. "[A]t a minimum [proving necessity requires a] showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability." *Smith, supra,* 102 F.3d at 795 (citations omitted). However, an individual's physical ability to do without an accommodation does not *ipso facto* invalidate a claim that an accommodation is necessary. *See McNamara v. Ohio Bldg. Auth.,* 697 F.Supp. 2d 820, 829 (N.D. Ohio 2010) (stating necessity is an individualized inquiry and plaintiff's actual physical ability to enter a building did not render the requested accommodation unnecessary) (citing *PGA Tour, Inc. v. Martin,* 532 U.S. 661, 688 (2001)); *see also Am. Council of the Blind v. Paulson,* 525 F.3d 1256, 1269, 1270 (D.C. Cir. 2008) (stating a disabled person's ability to "spend substantial sums of money to overcome obstacles" or "crawl on all fours in navigating architectural obstacles" does not preclude a finding that a public entity has failed to provide a necessary accommodation).

The tempered definition of necessity is tied to the requirement that public entities provide disabled individuals with "meaningful," as opposed to mere physical access. *Alexander v. Choate,* 469 U.S. 287, 301 (1985). Public entities cannot define a "benefit . . . in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled." *Id* ."Anti-discrimination legislation [would] . . . be emptied of meaning if every discriminatory policy is 'collapsed' into [a defendant's] definition of what is the relevant benefit." *Id.* n. 21 (quotations omitted).

12

The City argues that access to the alley is neither necessary nor reasonable because: 1) the FHA does not promise a right to live in the specific dwelling of one's choice; 2) allowing only one person to use part of an unimproved alley would fundamentally change the City's opening/improvement policy; 3) Plaintiff could build her own access ramp or driveway extension; and 4) no contiguous owners have a greater right of access to the alley than Plaintiff.

Plaintiff argues the City has failed to: 1) establish the purpose behind the ordinance or how granting her access would undermine the purpose of the ordinance; 2) show the requisite financial or administrative burden; or 3) demonstrate that alley access would not affirmatively ameliorate the effects of her disability.

The City first argues that Plaintiff's request is unreasonable because the FHA protects only the right to live in a residential neighborhood, not the right to live in a specific dwelling. *See Harding v. City of Toledo,* 433 F.Supp.2d 867 (N.D. Ohio 2006) and *Howard v. City of Beavercreek,* 276 F.3d 802 (6th Cir. 2002).

The City's argument is at odds with the statutory language of the FHA, which prohibits discrimination in servicing or selling a "dwelling" to a disabled individual or a person associated with such individual. 42 U.S.C. §§ 3604(f)(1), 3604(f)(2), 3604(f)(3).

Moreover, this case is considerably different than *Harding* and *Howard.*

In *Harding*, the plaintiffs challenged a zoning ordinance containing a spacing requirement for group homes located in single family neighborhoods. Because the alleged discrimination pertained to the zoning of residential neighborhoods, my decision in *Harding* addressed neighborhoods rather than a particular dwelling. However, nothing about the applicability of the FHA to individual residences follows from my decision in *Harding*.

13

In *Howard*, the Sixth Circuit held that a City reasonably denied a variance request because the accommodation was not necessary – not because the FHA was inapplicable to particular dwellings. 276 F.3d at 807.

The plaintiff in *Howard* suffered from PTSD. *Id.* at 804. He requested a variance to build a six foot fence along the length of his property. *Id.* He had lived on the same property for many years without the fence and presented no evidence that his disability had worsened. *Id.* Moreover, both the plaintiff and his doctor had concluded only that it was possible that a fence could alleviate his symptoms. *Id.*

Although the court ultimately denied the plaintiff's request, its holding in *Howard* makes clear that the FHA encompasses both a right to live in residential neighborhoods and a right to live in the dwelling of one's choice:

> [a]lthough the requested variance may have reduced some of the stress Howard reportedly was subjected to, Beavercreek's denial of Howard's variance request has neither excluded Howard from the neighborhood **or residence** of his choice, nor has it created less opportunity for Howard as a handicapped person, to live in his neighborhood.

*Id.* at 807. (Emphasis added).

I reject the City's first unreasonableness argument. The FHA protects the right of disabled individuals "to enjoy the housing of their choice." *Smith, supra,* 102 F.3d at 794-95. This encompasses a right to live in residential neighborhoods as well a right to live in the residence of one's choice. *Id.*

The next issue is whether Plaintiff's request is unreasonable because it would undermine the City's policy regarding the opening and improving of public rights-of-way.

14

Determining the reasonableness of a requested accommodation is a fact specific inquiry. *McNamara, supra,* 697 F.Supp.2d at 829. Analogizing to the facts of *Dryer v. Flower Hosp.,* 383 F. Supp. 2d 934 (N.D. Ohio 2005), the City argues that Plaintiff's requested accommodation is both unreasonable and unnecessary.

The court in *Dryer* considered a disabled individual's request that a hospital provide her with oxygen during the times she visited her husband. *Dryer, supra,* 383 F.Supp.2d at 940-41. The court found the plaintiff's request was unreasonable. *Id.* at 941.

To determine reasonableness, the court in *Dryer* looked to a state statute. The statute clearly stated that the hospital's purpose was to serve patients in its care. *Id.* at 940. The court reasoned that requiring the hospital to care for visiting public would directly undermine its ability to care for admitted patients. *Id.* For this reason, the court found the request unreasonable.

In this case, in contrast, without ever identifying a relevant purpose for its policy, the City asserts that approving Plaintiff's request would fundamentally alter its policy. Absent an identifiable purpose, however, the City's assertion merely begs the question.

Implicitly, the City seems to argue that the purpose of the ordinance is to grant access to groups or entire residential blocks. However, unlike the situation in *Dryer,* that "purpose" cannot found in the ordinance itself. In fact, the text of the ordinance seems to undermine such a contention directly. The ordinance states that "any person" may petition. Accordingly, I reject the City's argument that Plaintiff's request is unreasonable because it would undermine the purpose of the City's policy.

The next issue is whether Plaintiff's requested accommodation is unnecessary.

15

The City argues that *Dryer* supports its argument that Plaintiff's requested accommodation is unnecessary.

Plaintiff argues that the City has an affirmative duty to accommodate her, and it cannot shift its burden of accommodation to her.

According to Plaintiff, requiring her to solve her own problem contravenes the well-established rule that public entities have an *affirmative duty* to ensure meaningful access to public services.

I reject the City's argument that *Dryer* supports its claim that Plaintiff's requested accommodation is unnecessary. Absent alternatives available to Plaintiff at *de minimus* cost and burden, the City must, when necessary, provide meaningful access. The alternatives that were available to the plaintiff in *Dryer* are clearly distinguishable from those available to Plaintiff.

The service of providing driveway access to lots is a public service. *See Johnson v. City of Saline,* 151 F.3d 564, 569 (1998) (stating that "services" includes all activities a government undertakes); *American Council of the Blind v. Paulson,* 525 F.3d 1256, 1270 (D.C. Cir. 2008) (dictum) (stating that an entity cannot argue that "because the mobility impaired may be able either to rely on the assistance of strangers or to crawl on all fours in navigating architectural obstacles, they are not denied meaningful access .").

The court in *Dryer* concluded that the plaintiff's request was unnecessary because she could easily transport her own portable oxygen tanks to the hospital when she came to visit her husband. 383 F.Supp.2d at 941. Unlike the situation here, the plaintiff in *Dryer* could ameliorate the effect of her disability, while enjoying equivalency of access with other visitors, at slight, if any additional cost and with very minimal additional burden.

16

In this case, the alternatives the City suggests to Plaintiff are either unworkable, very expensive, or both.

The City has earlier suggested to Plaintiff that she install a chair lift on the stairs leading from her garage to the first floor of her home. Expense aside, Plaintiff told the City that a lift would not ameliorate the effects of her disability. This is so, according to Plaintiff, because the stairs leading from the garage to her first floor are "split" – the top section proceeds in a different direction than the bottom section. Plaintiff thus would either have to purchase two separate lifts or be stuck between the two sets of stairs leading from her garage to her home.

The City now contends that Plaintiff should solve her own problem by installing a ramp or a driveway extension. According to the City's report, the ramp would consist of four smaller ramps, each 26 feet long, and multiple switchbacks. The report does not opine on the cost of installing either the ramp or the driveway extension. It was incumbent on the City to do so.

Unlike in *Dryer*, the "alternatives" the City suggests to Plaintiff are both costly, or at least appear so, and unduly burdensome. Plaintiff, moreover, is will, as the ordinance allows, to bear the necessary costs for placing gravel on the alley. Thus the City would incur no construction burden or cost from allowing Plaintiff to make any necessary alley alterations.[7] Moreover, accessing her home from her backyard would substantially alleviate the pain, inconvenience, and embarrassment Plaintiff currently endures.

---

[7] The City may actually benefit from allowing Plaintiff to gravel and use the alley. In his deposition, the City's chief of police also stated that if the alley were open, graveled, and plowed, it would improve the City's emergency response capabilities.

Moreover, by allowing plaintiff to enter and leaver her home more easily would more completely make coming and going as relatively easy for her as for most homeowners. An accommodation which fails to reach this aspect of a disabled person's life also fails, in my view, to be as accommodating as, whenever reasonably possible, it should be.

I find the accommodation of providing alley-way access to plaintiff's residence is necessary, and reasonable and will substantially ameliorate the effects of Plaintiff's disability.

The last issue is whether Plaintiff's request, despite these facts, is nonetheless unreasonable as a matter of law because the City is simply treating her the same as other similarly situated residents.

The City argues that it is providing Plaintiff with the same service or benefit – curb cut driveway access – that it provides to other residents with driveways on West Harrison.

Plaintiff argues that the City's framing of the benefit as "garage access for homeowners with garages accessible from West Harrison Street" is an unfairly narrow characterization of the relevant benefit. Instead, Plaintiff states the relevant benefit is meaningful driveway access. I agree.

Anti-discrimination statutes aim to provide "equal results, not just formal equality." *Smith, supra,* 102 F.3d at 795. The City's attempt to the relevant service narrowly construe undermines the law's purpose of providing equal opportunity.

Even if having a garage on the alley could fairly be construed as an eligibility or other policy requirement, it is a basic principle of anti-discrimination law that providing equality of opportunity requires "not blindfolded equality, but responsiveness to difference; not indifference, but accommodation." *Ability Center of Greater Toledo v. City of Sandusky,* 385 F.3d 901, 907-08 (6th Cir. 2004). "By definition, any special 'accommodation' requires . . . [that an individual with] a

18

disability [be treated] differently, i.e., preferentially. And the fact that the difference in treatment violates a[ ] . . . disability-neutral rule cannot by itself place the accommodation beyond the Act's potential reach."

The City provides driveway access to Plaintiff's non-disabled neighbors via curb cuts. The curb cuts enable Plaintiff's neighbors easily to access their homes. To have equally meaningful driveway access to her home, Plaintiff needs to be able to park her car on the portion of her property that sits at the same elevation as her back door.

Allowing Plaintiff to use the alley will give her meaningful driveway access on par with that of her neighbors. Moreover, granting Plaintiff's request will ameliorate the effects of her disability without imposing additional financial or administrative burdens on the City and without undermining the City's road opening/improvement policy.

I find, as a matter of law, that the City is required to approve Plaintiff's accommodation request.[8]

### 3. Discrimination in the Sale or Rental of Dwelling

In addition to prohibiting discrimination in the provision of services, the FHA also prohibits public entities from discriminating in the "sale or rental, or otherwise mak[ing] unavailable or deny[ing], a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1). The

---

[8] Nothing in the records suggests that the likely frequency or timing of plaintiff's ingress and egress would be such as to cause undue disturbance to her neighbors. Moreover, whatever relief plaintiff receives could be limited to trips in which she or someone else with a mobility disability is a passenger – *i.e.*, so that the alley route does not become one of general access by others. Moreover, such relief might be framed as being in the nature of a easement which would expire either on plaintiff's death or sale of her home and move elsewhere. The burden on the neighbors would thus be minor and, potentially, of limited duration.

19

Sixth Circuit has held that the liability provisions of the FHA overlap and are not mutually exclusive. *See Nationwide Mut. Ins. Co. v. Cisneros,* 52 F.3d 1351, 1357 (1995) (stating that claims of discrimination in sale of property insurance may be brought under the "otherwise make unavailable" provision in § 3604 and the specific financing provisions in § 3605).

Defendant argues the "otherwise make unavailable language" in § 3604(f)(1) only applies to the initial sale and rental and transactions directly related to the sale and rental of a dwelling.

Plaintiff argues the section applies to any discriminatory action that makes an already purchased dwelling unavailable to its owner.

District courts have concluded that the "otherwise make unavailable" language in § 3604(f)(1) is inapplicable to post-sale acts other than the sale of property insurance. *Eva v. Midwest National Mortgage Bank,* 143 F.Supp.2d 862, 883 (N.D. Ohio 2001); *Laufman, et al. v. Oakley Building and Loan,* 408 F.Supp. 489 (S.D. Ohio 1976). Generally, transactions related to "maintaining a dwelling, which the owner or occupant previously acquired .  .  .fall outside the scope of § 3604(f)(1)." *Eva, supra,* 143 F.Supp.2d at 885 (citations omitted).

I find, with the exception of post-sale property insurance transactions, the "otherwise make unavailable" language in § 3604(f)(1) prohibits discrimination in the initial sale or rental of a dwelling or discriminatory acts directly related to the initial sale or rental of a dwelling.

Plaintiff has lived in her home for approximately twenty years. As I understand the law, her claim for discrimination in the provision of services is properly pursued under § 3604(f)(2), which specifically prohibits discrimination in the provision of services in connection with a dwelling. In any event, I have already granted plaintiff the relief which she seeks.

**4. Retaliation/Intimidating or
Interfering with Exercise of Rights**

20

The plaintiff claims that the City unlawfully retaliated against her when she asserted her rights under the ADA and FHA . She points to various incidents. These include that the City: 1) threatened citation; 2) erected the barrier almost immediately after her husband threatened to sue when told to remove the gravel and cease work; 3) failed to investigate Plaintiff's disability further after receiving a letter and having numerous phone conversations; and 4) delayed consideration of Plaintiff's alley petition for procedural reasons.

"Retaliation claims arise in any number of contexts." *Thaddeus-X v. Blatter,* 175 F.3d 378, 386-87 (6th Cir. 1999). Generally, the elements of retaliation claims under federal discrimination statutes are similar. *Id.* "The essence of such a claim is that the plaintiff engaged in conduct protected . . . by statute, the defendant took an adverse action against the plaintiff, and this adverse action was taken (at least in part) because of the protected conduct." *Id.*

Both the ADA 42 U.S.C. § 12203 (b). and FHA, 42 U.S.C. § 3617, prohibit public entities from interfering with the exercise of protected rights. In addition, the ADA prohibits retaliation against an individual (such as Mr. Vance), "because [he or she] has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a)(b).

The City argues that Plaintiff has no claim for interference or retaliation because she has failed to present any evidence that the City acted or failed to act because of a discriminatory animus. Moreover, according to the City, its actions were not "substantial" and, as such, cannot be the basis for a retaliation claim.

Plaintiff argues she is not required to prove substantiality or discriminatory animus to prevail on a retaliation or interference claim. According to Plaintiff, she must only show: 1) she exercised a right, 2) defendant knew she exercised that right; 3) defendant took an adverse action; 4) and there

21

was a causal connection between the defendant's adverse action and her protected activity. *Walborn v. Erie County care Facility,* 150 F.3d 584, 588-89 (6th Cir. 1998).

Assuming, *arguendo,* that the City is correct, and plaintiff must prove "substantial" retaliatory actions, *but see Hamad v. Woodcrest Condominium Ass'n,* 328 F.3d 224, 236-37 (6th Cir. 2003),[9] I conclude that a rational jury could find one or more of the City's actions to have been "substantial." Of these, the erection of a physical barrier was the most graphic and significant. At least prior to then plaintiff, if it were absolutely essential for her to do so (as, for example, might have been necessary if she suffered a medical emergency), was able to exit her residence through the back.

The City also claims Plaintiff's retaliation claim must fail because she has produced no evidence that the City took any of the alleged retaliatory actions because of her disability. According to the City, in refusing to grant Plaintiff alley access, it was merely upholding a previous decision.

Plaintiff argues that she need only produce evidence that the City's adverse xactions were causally connected to her attempts to exercise her rights under the ADA and the FHA. According to Plaintiff, it is sufficient if the City knew of her attempts to exercise her rights under the ADA or the FHA and took any of the above actions, at least in part, because of this knowledge.

In *Lindsay v. Yates*, 578 F.3d 407, 416 (6th Cir. 2009), the court stated that  "the key question this Court must answer is whether the plaintiffs have 'presented sufficient evidence to permit a reasonable jury to conclude [they] suffered' an adverse housing action 'under circumstances giving rise to an inference of unlawful discrimination,'" That inference arises when the plaintiff

---

[9] The court in *Hamad*, cited several examples of actionable retaliation, including: 1) exclusion from meetings, 2) differential enforcement of ordinances, 3) deferral of votes, and 4) citations for violations that previously went unpunished. 328 F.3d at 237.

demonstrate[s] . . .that a causal connection exists between the protected activity and the adverse

employment action." *Walborn v. Erie County Care Facility,* 150 F.3d 584, 589 (6th Cir. 1998).

A rational jury could find that plaintiff's proof of the overall sequence of the City's handling

of plaintiff's efforts to exercise her ADA and/or FHA rights shows a causal connection between such

exercise and its actions.

I deny defendant's motion for summary judgment on plaintiff's retaliation claim.

## Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT:

1. Plaintiff's motion for partial summary judgment (Doc. 36) be, and the same hereby is

denied with regard to plaintiff's claim under 42 U.S.C. § 3604(f)(1) for discrimination in the

sale or rental of housing, and otherwise granted;

2. Defendant's motion for summary judgment (Doc. 28) be, and the same here by is denied.

The Clerk shall set a date and time for a status conference.

So ordered.

/s/ James G. Carr
Sr. United States District Judge